NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | | |
| MARY DINARDO, as Guardian ad litem: | | |
| for, GWENDOLYN DINARDO, a minor: | | |
| child, MARC ANTHONY DINARDO,   : | **Hon. Dennis M. Cavanaugh** | |
| II, a minor child and ELLA DINARDO, : | | |
| a minor child, MARY DINARDO      : | **OPINION** | |
| as Administratrix of the ESTATE OF   : | | |
| MARC ANTHONY DINARDO,        : | Civil Action No. 11-cv-4505 (DMC) (MF) | |
| : | | |
| Plaintiff,      : | | |
| : | | |
| v.        : | | |
| : | | |
| CITY OF JERSEY CITY, THOMAS   : | | |
| COMEY, JOHN DOES 1-5,       : | | |
| : | | |
| Defendants.     : | | |
| _____: | | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendant City of Jersey City and

Thomas Comey ("Defendants") to dismiss the complaint filed by Plaintiff Mary DiNardo

("Plaintiff") on behalf of herself and her three minor children (collectively, "Plaintiffs").

Pursuant to FED.R.CIV.P. 78, no oral argument was heard.  After considering all submissions and

based upon the following, Defendant's motion to dismiss is **granted.**

## I.   BACKGROUND

This action, brought by Plaintiff Mary DiNardo, arises out of events that resulted in the

death of her husband, Mark DiNardo ("Officer DiNardo"), on July 16, 2009.  (Pl.'s Compl. ¶ 28,

Aug. 3, 2011, ECF No. 1).  Officer DiNardo was employed as a police officer within the

Emergency Services Unit of the Jersey City Police Department.  (Loftis Cert. ¶ 3, Nov. 21, 2011,

ECF No. 7-1).  On July 17, 2009, he was on duty and sent to respond to 24 Reed Street in Jersey

City.  Id.  At that location he faced grave danger in the form of a hostile "shotgun wielding

fugitive."  (Def.'s Supp. Br. 1, Sept. 30, 2011, ECF No. 5-1).  The shooter had shot and wounded

another police officer moments before shooting Officer DiNardo.  Id.  Officer DiNardo was

transferred to the hospital for treatment, where he was determined to be brain-dead.  (Pl.'s Opp'n

Br. 1).  Tragically, Officer DiNardo's life ended on July 19, 2011 when he was removed from life

support.  Id.

     Plaintiff is Officer DiNardo's late wife, Administratrix for his estate, and surviving parent

of their three children, Gwendolyn, age 6, Marc Anthony II, age 7, and Ella, age 4.  (Pl.'s Compl.

¶ 3).  Plaintiff brings suit in her "individual capacity as well as her capacity as spouse . . .

Guardian ad Litem . . . surviving parent . . . and Administratrix."  (Pl.'s Compl. ¶ 5).  Plaintiff

filed the instant complaint on August 3, 2011.

     Plaintiff initiated an action similar to this one, arising out of the same incident, in the

Superior Court of New Jersey, Hudson County, Law Division (the "State Court") on June 22,

2010.  (Pl.'s Opp'n Br. 1-2).  Plaintiff sought to file a late tort claims notice in the State Court.

(Pl.'s Opp'n Br. 2).  Plaintiff argued that the circumstances of her untimeliness, or failure to file

within ninety days of the death of her husband, were exceptional.  Id.  The State Court denied the

application.  Id.  The Appellate Division affirmed the decision noting particularly that it had no

need to address the issues presented under the Workers Compensation Act.  Id.

     Plaintiff asserts six causes of action against Defendants in this matter including: Count

One under 42 U.S.C. § 1983, Count Two for failure to train and supervise, Count Three for

conspiracy under 42 U.S.C. § 1983, Count Four under the New Jersey Constitution art. I, paras. 1 and 22, Count Five for wrongful death and Count Six in a survivor action.

## II.   STANDARD OF REVIEW

Defendants move to dismiss the action under FED.R.CIV.P.12(b)(6) for failure to state a claim.  In deciding a motion to dismiss, the District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to [the Plaintiff]."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). The Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, when their truth is assumed, those factual allegations "must be enough to raise a right to relief above a speculative level."  Twombly, 550 U.S. at 555.  Plaintiff's obligation "requires more than labels and conclusions."  Id. at 545.  To survive a motion to dismiss, the complaint must state a plausible claim.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

In reviewing a motion to dismiss, it is well-established that a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  M & M Stone Co. v. Pa., 388 Fed.Appx. 156, 162 (3d Cir. 2010).

**III.**     <u>ANALYSIS</u>

**1.       Pre-answer Motion to Dismiss**

Rule 12 provides specifically for pre-answer motions to dismiss.  FED. R. CIV. P. 12(b)

(2012).  Plaintiff advances argument that the pre-answer, pre-discovery nature of the instant

motion to dismiss is prejudicial.  FED. R. CIV. P. 12 is stationed upon the policy of avoiding

unnecessary litigation.  27A Fed. Proc., L. Ed. § 62:423 (2012).  Considering that policy, it

follows that a main objective is eliminating any unnecessary delay at the pleading stage.  <u>Id.</u>  To

this end, Defendants are not only permitted, but expected, to file an omnibus pre-answer motion

informing the Court of strong preliminary arguments in defense of the complaint.  <u>Id.</u>  The

defenses are asserted pre-answer because, if sustained, the interest of judicial efficiency is served

by terminating the action at the pleading stage.  <u>McCurdy v. Amer. Bd. of Plastic Surgery</u>, 157

F.3d 191, 194 (3d Cir. 1998) (citation omitted).

Plaintiff initially argues that Defendants engaged in actions "designed to conceal, cover-

up and obfuscate the facts pertaining to the scope of the deficiencies of the training and

supervision of the Emergency Services Unit." (Loftis Cert. ¶ 6).  Plaintiff further states that

document requests were not answered by Defendants, and that "critical information has not yet

been produced." <u>Id.</u>  Even taking these arguments in the light most favorable to the Plaintiff,

they do not supplant the need to state a plausible claim in this matter.  This argument that

Plaintiff should be entitled to discovery addresses an issue tangential to Defendant's 12(b)(6)

motion, rather than the Complaint defects pointed out by Defendants.  (Pl.'s Opp'n 5).

Moreover, Plaintiff already submitted this issue to the Superior Court of New Jersey,

Hudson County, Law Division (the "State Court").  (Loftis Cert. p. 18).  Therein, Plaintiff

obtained an order permitting the preservation of evidence.  Id.  Additionally, Plaintiff

acknowledges that the incident causing death has already been investigated by multiple law

enforcement agencies.  (Pl.'s Opp'n 12).  Plaintiff's argument is unavailing.

>    **2.      Rooker-Feldman**

Plaintiff brought before the State Court, issues surrounding a potential tort claim against

the city.  It is an "elementary principle that a party's recourse for an adverse decision in state

court is an appeal to the appropriate state appellate court, and ultimately to the Supreme Court

under § 1257, not a separate action in federal court." Parkview Assocs. Pshp. v. City of Leb.,

225 F.3d 321, 324 (3d Cir. 2000).  Under the Rooker–Feldman doctrine, the District Court lacks

jurisdiction when: (1) the federal Plaintiff lost in state court; (2) Plaintiff complains of injuries

caused by the state court judgment; (3) the judgment complained of was rendered before the

federal suit was filed; and, (4) Plaintiff invites the District Court to review and reject the

judgment.  Great W. Mining & Mineral Co. v. Fox Rothschild, LLP, 615 F.3d 159 (3d Cir.2010).

"The Rooker-Feldman doctrine is based on the statutory foundation of 42 U.S.C. § 1257 and the

well-settled understanding" that review of a State Court decision is reserved from the lower

federal courts for the Supreme Court.  Id.

The Honorable Maurice J. Gallipoli, A.J.S.C. denied Plaintiff's motion for leave to file a

late notice of claim on August 30, 3010.  The issues Plaintiff presented in State Court are

strikingly similar to Counts Five and Six involving tort claims arising out of the same incident

here.  The State Court analyzed the "viability of Plaintiff's presumed cause of action against the

City under the New Jersey Tort Claims Act." (Def.'s Supp. Br. Ex. A, at 2, Sept. 30, 2011, ECF

No. 5-1). In the opinion filed August 30, 2010, the State Court considered the same facts

addressed the "putative cause of action . . . Plaintiff presumably ultimately [sought] to file against

the city." Id. Namely, a claim against the city under the intentional wrong exception to the

Worker's Compensation Act.

The substance of the State Court matter involved Plaintiff's failure to file a formal Notice

of Claim within ninety days of either the accrual date of the survival cause of action, July 16,

2009, or of the wrongful death cause of action, July 21, 2009. Id. Plaintiff filed a State Court

motion on June 23, 2010, within a year of either date, to request leave to file a late Notice of Tort

Claim. Id. Judge Gallipoli, disagreed with Plaintiff's argument citing multiple oral requests and

an Open Public Records Act request submitted to the Jersey City Police Department for copies of

the investigative report documenting the events of July 16, 2009 to prove "substantial

compliance" with the notice requirement. The State Court found that requests for the

investigative report were not equivalent to adequate notice of the claim. Judge Gallipoli then

engaged in an exhaustive analysis of whether Plaintiff asserted compelling grounds for a

discretionary extension because of extraordinary circumstances finding that none existed.

Therefore, Plaintiff's failure to notify the city of her tort claim within the ninety day period was

fatal to the tort claim itself.[1]   This Court agrees with the State Court Opinion on both accounts.

_____

[1]Additionally, the State Court found that Plaintiff's claim under the intentional wrong
exception to the Worker's Compensation Act's was barred. (Def.'s Supp. Br. Ex. A, at 13). The
Court held that Plaintiff could not satisfy the two conditions that would remove the cloak of
immunity protecting the city against such claims. Id. at 12. The first condition required proof of
knowledge that the action is substantially certain to result in injury or death. Id. (citing Laidlow

Defendants allege that "Plaintiff's sole purpose in filing this baseless federal civil rights claim was to seek another venue to pursue their state claims." (Def.'s Letter Reply 3, Dec. 1, 2011, ECF No. 9). In this Court, Plaintiff barely addresses the merits of Defendants' argument under Rooker-Feldman. (Pl.'s Opp'n 12). Plaintiff simply argues that the State Court rulings apply only to Mary DiNardo and not Officer DiNardo's children, who are named Plaintiffs in this matter. This argument is unavailing.

### 3.      Failure To State a Claim

### A.      Counts Five and Six: Tort Claims

Despite convincing grounds for dismissal of Counts Five and Six under the Rooker-Feldman doctrine, the Court reaches the plausibility of Plaintiff's claims here. Plaintiff brings suit against Defendants for grave injury sustained by her late husband, while in the line of duty, that resulted in his tragic death. There is no doubt that, by all measures, Plaintiffs suffered indescribable pain and suffering as a result of this ill-fated incident. Unfortunately, the nature of Officer DiNardo's line of work involves the near impossibility of a workplace free of all risk or harm.

Plaintiff asserts tort claims in wrongful death and survivorship actions. At first, the issue seemed to be framed by Plaintiff as a safe work environment claim. However, opposing the instant motion, Plaintiff objects to Defendants' characterization of the complaint as such and

---

v. Hariton Mach. Co., 170 N.J. 602, 623 (2002)). The second condition required proof that the resulting injury was more than a "fact of life" or "reality of law enforcement" in today's times and proof that the conduct was plainly beyond anything the Legislature intended to immunize. Id.

acknowledges that it would be "almost an impossibility" for Defendants to provide a workplace free of all risk or harm.  (Pl.'s Opp'n 10, Nov. 21, 2011, ECF No. 7).  Instead, Plaintiff avers that Defendants acted with deliberate indifference.  Id.  The "deliberate indifference," Plaintiff explains, involves a "course of repeated conduct or custom . . . [involving the failure] to provide the decedent with proper training [and] equipment and allow[ing] untrained individuals to make tactical decisions on July 16/17, 2009."  Id.  Plaintiff argues this conduct caused or contributed to injuries which were substantially certain to, and ultimately resulted in death.  Plaintiff essentially argues this Court should disregard the Supreme Court's holding in Kaucher v. County of Bucks, which held that even "conscious-shocking" conduct creating dangerous conditions was indistinguishable from a safe workplace claim.  455 F.3d 418 (3d Cir. 2006).  In Kaucher, the Third Circuit found that the Supreme Court had already foreclosed this avenue of liability.  Collins v. City of Harker Heights, Tex., 503 U.S. 115 (1992) (holding that liability should not attach under the substantive due process clause or the state created danger doctrine[2]).  This Court

---

[2]The "state created danger" theory was adopted by the Third Circuit in 1996 to allow liability to attach where the state acts to create or enhance a danger depriving one of his or her Fourteenth Amendment right to substantive due process.  Sanford v. Stiles, 456 F.3d 298, 304 (3d Cir. 2006).  In a state-created danger case, a Plaintiff must prove the following four elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor's degree of culpability "shocks the conscience;" (3) a relationship between the state and the Plaintiff existed, or Plaintiff was a member of a discrete class, such that Plaintiff was a foreseeable victim of the Defendant's acts; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.  Sanford, 456 F.3d at 304-5.  The parties have not fully briefed argument under this theory of liability.  However, the Court addresses the issues of whether the state "created" or "enhanced" a danger or otherwise acted in a way that "shocks the conscience."  See supra, Section III.3.C.  In that vein, this Court finds a lack of pertinent facts supporting liability under the state created danger theory.

cannot allow Plaintiff's pre-textual "deliberate indifference" argument to succeed in light of the

Kaucher holding.  Therefore, this Court finds the foregoing reasons including the preclusive

Rooker-Feldman application to these claims, grounds for dismissal of Counts Five and Six.

      **B.      Counts One, Two and Three: § 1983 Claims**

      Plaintiff asserts claims under § 1983 in Counts One and Three and a complementary

failure to supervise or train claim in Count Two.  Proper analysis of a § 1983 claim when

asserted against a municipality involves two steps: 1) whether Plaintiff's harm was caused by a

constitutional violation, and if so, 2) whether the city is responsible for that violation.  Collins v.

City of Harker Heights, Tex., 503 U.S. 115, 120 (1992) (involving the death of a sanitation

department employee due to asphyxia after entering a manhole to unstop a sewer line) (citing

Oklahoma City v. Tuttle, 472 U.S. 808, 817 (1985)).  The Collins Court cited to the Monell

decision to buttress its holding with the proposition that although § 1983 applies to

municipalities, they may not be held liable unless action pursuant to official municipal policy

caused the constitutional tort.  503 U.S. 115, 120-1 (1992) (citing Monell v. N.Y.C. Dep't of Soc.

Servs., 436 U.S. 658 (1978)).  Further, the city is not responsible for the torts of its agents, only

for its own wrongdoing.  Monell, 436 U.S. at 694.

      In Collins, the Plaintiff, as here, asserted that Defendants failed to train or supervise, and

that that failure caused death.  The Court reaffirmed the Monell line of thinking holding that state

law, rather than the Federal Constitution, generally governs the substance of the employment

relationship.  503 U.S. at 128.  "The Due Process Clause," the Court noted, "should not be

interpreted to impose federal duties that are analogous to those traditionally imposed by state tort

law."  Id.  As Plaintiff's state tort claims fail to state a plausible grounds for relief, Plaintiff is left

with the narrow avenue of liability under § 1983.  Plaintiff has not persuaded this Court of

Defendants' engagement in any wrongdoing, insofar as either the events surrounding the training

and supervision of Officer DiNardo, the direction that Officer DiNardo report to 24 Reed Street

or the handling of internal documents and other evidence.  This Court will not deviate from well

established law in this arena where the perpetrator is not an agent of the government, but is rather

a criminal third party.  Therefore, Plaintiff's Counts One, Two and Three are dismissed.

>    **C.**      **Count Four: New Jersey Constitution**

Plaintiff asserts alternative claims under the New Jersey Constitution based upon

fundamental rights and criminal due process, under Article I, paragraphs 1 and 22.  Plaintiff avers

Defendants' conduct amounts to a Fifth and, or alternatively, a Fourteenth Amendment due

process violation.  Plaintiff then characterizes Defendants' responsive argument as proof that "a

public employee forfeits all constitutional rights when he becomes an employee."  (Pl.'s Opp'n

11).  Public employees plainly do retain significant Constitutional rights, however, the

government simultaneously enjoys an entitlement to protection from private suit.  The civil value

requiring that the government be protected from private suit, rather than a forfeiture of any rights,

is the obstacle Plaintiff runs into here.  The Supreme Court jurisprudence guiding this Court's

handling of Plaintiff's claim exercises a prophylactic effect on the procedural and substantive

protections afforded to the government against private suit.

Plaintiff filed notice of her tort claim in an untimely manner and failed to present

evidence to prove any wrongdoing, especially such that would shock the conscience or show a

created or enhanced danger on the part of Defendants. Given the high standards required to show that Defendants could plausibly be held liable in this case, cannot surmount the hurdles of FED. R. CIV. P. 12(b)(6) here. Defendants rightly point out that broadening the causes of action available for injuries suffered in the line of duty would not only go against precedent, but also would expand interpretation of the due process clause to unimaginable breadths. The necessary balance is struck beyond the relief sought by Plaintiff.

### IV.    CONCLUSION

Due to the untimeliness of the notice filing, the preclusive effect of the Rooker-Feldman doctrine on Plaintiff's state tort claims, and Plaintiff's failure to state a plausible claim for relief under Federal law or the Constitution, Plaintiff has not convinced this Court that her complaint should survive Defendant's motion to dismiss. Based on the foregoing and the reasons herein expressed, this Court holds that Defendants' motion to dismiss is **granted**. An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Dated:      May __21__, 2012
Original:    Clerk
cc:           All Counsel of Record
              Hon. Mark Falk, U.S.M.J.
              File

11